IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Edward OCHMANSKI,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Civil No. 18-02784 (RBK)<br><br>**OPINION** |

**KUGLER**, United States District Judge:

This matter is before the Court on the appeal of Plaintiff Edward Ochmanski (Doc. No. 1) seeking review of the Administrative Law Judge's ("ALJ") decision denying Plaintiff's claims for disability insurance benefits under the Social Security Act. For the reasons below, the Court **AFFIRMS** the ALJ's decision denying benefits.

**I. BACKGROUND**[1]

**A. Procedural and Plaintiff's History**

Plaintiff Edward Ochmanski is a 37-year-old man who lives in New Jersey with his father and fiancé. (R. at 48, 82.) He is about six feet tall and weighs about 285 pounds. (R. at 26.) Plaintiff splits custody of his two sons, ages eight and thirteen. (R. at 49.) He has past relevant work as a police officer and dispatcher. (R. at 32, 70.)

On January 13, 2015, Plaintiff filed an initial claim for disability based on alcoholism, depression, and degenerative joint disease. (R. at 82.) Plaintiff alleged disability as of January

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and relevant to the instant motion. "R." in citations refers to pages in the administrative record. Additional facts are set forth as needed in the "discussion" section below.

2, 2013. (R. at 82.) That claim was denied initially on May 15, 2014, and again upon reconsideration on August 15, 2014. (R. at 20.) Plaintiff then filed a request for a hearing, which was held on August 28, 2014. (R. at 20.) The ALJ issued a decision on March 15, 2017, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 20–34.) This appeal followed for review of that decision. (Doc. No 1.)

## B. ALJ Hearing and Medical Evidence

In finding Plaintiff not disabled, the ALJ considered Plaintiff's relevant medical history and examinations. The following briefly notes the relevant medical evaluations and hearing testimony pertinent to the ALJ's decision and Plaintiff's appeal. These evaluations include those done by Dr. Matthew Austin, Plaintiff's orthopedic surgeon, and an individual at RA Pain, where Plaintiff received pain management services.

### 1. Hearing Testimony

Plaintiff testified that around the time he stopped working in 2011 to seek treatment for alcohol abuse, he noticed pain in his right hip. (R. at 54.) Plaintiff ultimately underwent a total right hip replacement, performed by Dr. Sharkey, but because that surgery was not successful, Plaintiff required a right total hip revision surgery, which Dr. Austin performed on August 7, 2013. (R. at 54–55; *see also* R. at 25.) At the hearing, Plaintiff detailed various issues as a result of his hip pain and surgery, including: swelling, difficulty sitting comfortably, corresponding left hip pain and the potential need for left hip replacement, difficulty walking on uneven surfaces and long distances, throbbing, pain, and numbness, among other similar issues. (*E.g.*, R. at 55–56, 58–64.)

Plaintiff also detailed his issues with alcohol abuse and mental impairments. Plaintiff testified, for example, that he initially stopped drinking in 2013, but "fell off the wagon" for a

2

brief period in 2015. (R. at 50–51.) According to Plaintiff, he has been sober since June 25, 2015. (R. at 50.) When asked if he has trouble thinking, concentrating, and remembering in an ordinary day, Plaintiff replied that his mind is "all over the place." (R. at 64.) He also noted that he takes Focalin for ADHD, among other medications for his depression and anxiety. (R. at 52.) Plaintiff explained that he notices a "huge difference" when he takes his medicine, which has his depression "controlled at this time." (R. at 53–54.)

### 2. Dr. Austin

Shortly after performing Plaintiff's right hip revision surgery in August 2013, Dr. Austin examined Plaintiff in September and October 2013. (R. at 867–870.) In the progress notes from October 2013, Dr. Austin noted that Plaintiff could do no more than sedentary work activity, could only do activities of daily living, and noted that he would support Plaintiff's application for long-term disability. (R. at 867; *see also* R. at 869.) On July 11, 2014, Dr. Austin filled out a form regarding Plaintiff's ability to walk, among other things, although it does not appear from the record that Dr. Austin examined Plaintiff on this date. (R. at 862–864, 884.)

On February 11, 2014, over a year after Dr. Austin last examined Plaintiff in October 2013, (R. at 884), Dr. Austin completed a medical report detailing Plaintiff's limitations. (R. at 883–886.) Specifically, Dr. Austin opined that Plaintiff could lift only one to five pounds, could stand and walk less than two hours per day, could sit less than six hours per day, and had a limited ability to push and/or pull. (R. at 885.) He also noted that Plaintiff should only perform his activities of daily living. (R. at 885.)

Ultimately, the ALJ gave Dr. Austin's opinions "partial weight" because his 2013 opinions were shortly after Plaintiff's hip surgery, no evidence existed that they were intended to

3

be permanent, and Plaintiff's examinations and daily activities indicated that Dr. Austin's findings were overly restrictive. (R. at 30.)

### 3. RA Pain

Plaintiff also received treatment from pain specialists at RA Pain. (R. at 1031–1033.) In a three-page report unaccompanied by written explanations and signed by a person with an illegible signature, an individual at RA Pain, potentially a doctor or a physician's assistant, checked boxes and circled options indicating that Plaintiff could sit, walk, and stand for two hours per day; frequently lift up to five pounds; occasionally lift between six and ten pounds but never more; could not use his feet for repetitive movements; and could not bend, stoop, squat, crawl, or climb. (R. at 1031.) The report's unidentified author also checked boxes restricting Plaintiff from activities involving unprotected heights, being around moving machinery, driving automotive equipment, and having exposure to marked changes in temperature, humidity, dust, fumes, and gases. (R. at 1031.) Finally, the report included a form in which the author circled options indicating the amount of pain Plaintiff experiences. (R. at 1032–1033.)

Ultimately, the ALJ assigned these opinions "little weight" because the author's signature is illegible, a physician's assistant is not considered an "acceptable medical source," and the findings are not fully supported by the treatment record. (R. at 32.)

### C. ALJ's Decision

Apart from discussing the opinions of Dr. Austin and those at RA Pain, the ALJ explained why Plaintiff was not disabled by using the five-step process for disability claims. The ALJ found as follows.

After noting that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, the ALJ found, at step one, that Plaintiff has not engaged in

substantial gainful activity since January 2, 2013, the alleged onset date. (R. at 22.) At step two, the ALJ found that Plaintiff had several severe impairments, including right hip osteoarthritis, status post reconstructive surgery, affective disorder, anxiety disorder, alcohol abuse, and obesity. (R. at 22.)

At step three, however, the ALJ explained that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. at 22–24.) Although the commentary was not an RFC analysis, the ALJ remarked at step three about the medical evidence regarding Plaintiff's cognitive limitations. The ALJ noted, for example, that when Plaintiff is not abusing alcohol and takes medication, Plaintiff is "stable" and his physician at Tatum-Brown Family Practice found a "normal attention span, appropriate mood and affect, and normal memory." (R. at 23; *see also* R. at 1082–1179.) In addition, Plaintiff can shop, drive, manage his finances, and assist his children with homework. (R. at 23.) Regarding Plaintiff's concentration, the ALJ also noted that Plaintiff's general practitioner at Tatum-Brown stated that Focalin "completely resolves" Plaintiff's poor attention span, lack of focus, and low energy. (R. at 23, 1087.)

Next, the ALJ formulated Plaintiff's Residual Functional Capacity ("RFC"). Specifically, the ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except as follows. (R. at 24.) The ALJ found that Plaintiff can perform occasional postural maneuvers and occasionally climb ramps and stairs, but cannot kneel, crawl, climb ladders, ropes, or scaffolds. (R. at 24.) The ALJ also found that Plaintiff cannot operate foot controls or push or pull with the right lower extremity. (R. at 24.) Indeed, the ALJ found that Plaintiff needs to elevate his right leg on a foot stool eighteen to twenty-four inches off the ground for half to two-thirds of a workday. (R. at 24.) Finally, the ALJ found that Plaintiff is

limited to unskilled work due to pain, mental health symptoms, side effects of medication, and lapses in focus and concentration. (R. at 24.)

In formulating this RFC, the ALJ discussed various sources of medical evidence regarding Plaintiff's hip and mental health issues, which are Plaintiff's primary focuses on this appeal. (R. at 24–32.) Although the ALJ noted Plaintiff's hip pain and mental health issues including concentration and focus, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely consistent with the medical and other evidence of record. (R. at 25.)

Regarding Plaintiff's hip issues, the ALJ noted that Plaintiff's treatment notes from October 2013 from Dr. Austin noted "good hip motion, stability, and strength bilaterally," and x-rays showed "satisfactory position and good alignment of the hip components." (R. at 25, 867.) The ALJ also noted that Plaintiff was instructed to bear weight as he could tolerate, and in a consultative physical examination in May 2014 with Dr. Juan Cornejo, showed full strength, intact sensation, and could sit comfortably, get up and down from the examination table without assistance, dress himself without assistance, and did not require a cane to ambulate. (R. at 25, 888–890.) Further, the ALJ noted that as of July 2016, the clinical findings of Plaintiff's pain specialist showed mildly limited right hip range of motion, among other things, but normal station, full strength, and that Plaintiff could walk on his toes, had intact sensation, and the notes from Tatum-Brown stated that had good pain control on his regimens. (R. at 26, 969–1022.)

Regarding Plaintiff's mental issues, including concentration and focus, the ALJ also detailed the medical evidence. Specifically, the ALJ concluded that the RFC was warranted, including for unskilled work, because Plaintiff's mental health issues are exacerbated by alcohol use, and he is stable when he is sober and taking medication. (R. at 27, 29.) In support of this

6

conclusion, the ALJ explained that Plaintiff's medications managed his symptoms and that Plaintiff had "coherent thought processes, appropriate thought content, intact memory, attentive concentration, and fair judgment" during his mental health examinations. (R. at 26.) Similarly, after achieving one-year sobriety, the ALJ noted that Plaintiff attended a consultative mental examination with Dr. Lawrence Seifer in May 2014, where Plaintiff displayed "logical and relevant thought processes, very good attention, good concentration, [and] intact memory," among other things. (R. at 27, 894–895.) The ALJ further noted that after relapsing with alcohol, Plaintiff was prescribed medications, including Focalin, which his physician noted "completely resolves" Plaintiff's poor attention span, lack of focus, and low energy. (R. at 27.) With this level of care, the ALJ explained, Plaintiff was "stable," able "to focus and concentrate better and complete tasks," and had "normal memory" and "normal attention span and concentration." (R. at 27.)

After additional discussion of the medical and record evidence in formulating Plaintiff's RFC, the ALJ proceeded to the remaining portions of the disability analysis. Specifically, the ALJ found that Plaintiff—a younger individual with at least a high school education—could not perform any past relevant work. (R. at 32.) But based on Plaintiff's age, education, work experience, and RFC, the ALJ found at step five that a significant number of jobs existed in the national economy that Plaintiff could perform. (R. at 33.) Accordingly, the ALJ found that Plaintiff was not disabled and denied his application for benefits. (R. at 34.)

## II. STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. §

405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, the Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."

42 U.S.C. § 423(d)(1)(A). Here, the ALJ used the established five-step evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak*, 777 F.3d at 611–12. First, the claimant must show that he was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that he has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509. Third, either the claimant shows that his condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that he cannot perform his past work, and the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (e). If the claimant meets his burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on his RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

Here, Plaintiff challenges several aspects of the ALJ's decision. First, Plaintiff claims that the ALJ erroneously rejected the medical opinions of Dr. Austin, Plaintiff's treating physician, and Plaintiff's treating pain management specialists at RA Pain. (Pl.'s Br. at 6–11.) Second, Plaintiff claims that the ALJ improperly assessed Plaintiff's RFC. (*Id.* at 11–15.) Third, Plaintiff contends that Defendant failed to carry its burden at step five. (*Id.* at 15.) Finally,

based on these alleged errors, Plaintiff asks the Court to award him summary judgment and find him disabled without further proceedings. (*Id.*) None of Plaintiff's claims provide grounds to remand. To the contrary, substantial evidence supports the ALJ's findings.

### A. The ALJ Did Not Err in Assessing the Medical Evidence

First, Plaintiff claims that the ALJ should have given Dr. Austin's opinion controlling weight under 20 C.F.R. § 404.1527(c)(2). (Pl.'s Br. at 9.) Specifically, Dr. Austin opined that that Plaintiff could lift and carry one to five pounds, could stand and/or walk less than two hours per day, could sit less than six hours per day, had a limited ability to push and/or pull, and should only perform activities of daily living. (R. at 30, 883–886.) The Court finds no such error.

20 C.F.R. § 404.1527(c) sets forth factors to consider in determining how to weigh evidence from medical sources, including: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; (5) the specialization of the individual giving the opinion; and (6) other factors. *See Labanda v. Comm'r of Soc. Sec.*, No. 17-cv-3354, 2018 WL 259948, at *1 (D.N.J. Jan. 2, 2018); *see also Davern v. Comm'r of Soc. Sec.*, 660 F. App'x 169, 172 (3d Cir. 2016) (noting that "the weight due a medical opinion depends on a variety of factors" under 20 C.F.R. § 404.1527(c)). If a treating source's medical opinion is not consistent with other substantial evidence in the case record, it need not be given controlling weight. 20 C.F.R. § 404.1527(c)(2); *see also Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 (3d Cir. 2008). Indeed, "[w]here inconsistency in evidence exists, the ALJ retains significant discretion in deciding whom to credit." *Ganges v. Comm'r of Soc. Sec.*, No. 17-cv-1982, 2018 WL 5342717, at *11 (D.N.J. Oct. 29, 2018) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, the ALJ "cannot reject evidence for no reason or for the wrong

reason." *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Here, substantial evidence supports the ALJ's decision to assign "only partial weight" to Dr. Austin's opinion. (R. at 30.) The ALJ assigned this weight to Dr. Austin's opinion because Dr. Austin had not provided any recent care to Plaintiff, his opinions in 2013 were given shortly after the claimant's revised hip surgery, and there was no evidence that the restrictions were intended to be permanent. (R. at 30.) As this Court recently held, these reasons constitute substantial evidence in support of the ALJ's conclusion. *See O'Neill v. Comm'r of Soc. Sec.*, No. 18-cv-0698, 2019 WL 413539, at *6 (D.N.J. Jan. 31, 2019) (finding that the ALJ "properly considered the opinion" of a doctor when, like here, ALJ gave the opinion "some weight" because it was "dated" and "did not make clear if the lifting restriction applied was temporary or permanent").

The ALJ's treatment of Dr. Austin is further supported by substantial evidence because, as the ALJ noted, Dr. Austin's findings were "overly restrictive" given other record evidence. (R. at 30.) The ALJ noted, for example, that contrary to restrictions noted by Dr. Austin, clinical findings of Plaintiff's pain specialist showed normal station in Plaintiff's right hip, full strength at 5/5, that Plaintiff could walk on his toes and had intact sensation. (R. at 30.) Plaintiff's general practitioner also documented "good pain control on regimen[s]." (R. at 30.) Coupled with the broad discretion afforded to an ALJ in assessing the credibility of medical opinions, these reasons constitute substantial evidence in support of the ALJ's weighing of Dr. Austin's opinion.[2]

---

[2] Plaintiff also briefly suggests that Dr. Austin's opinion should have been given "greater weight" based on "the proper consideration for each of the criteria set forth in 20 C.F.R. 404.1527(c)." (Pl.'s Br. at 10.) But this Court may not re-weigh the factors or make its own

11

Plaintiff falls equally short in alleging that the ALJ erred in treating the evidence from RA Pain. (Pl.'s Br. at 10.) Specifically, Plaintiff argues that specialists at RA Pain opined that Plaintiff's physical limitations resulted in less than sedentary capabilities, but the ALJ erroneously rejected the opinion. (*Id.*; R. at 1031–1033.) The ALJ, however, permissibly assigned this evidence "little weight" for several reasons. (R. at 32.)

First, the ALJ explained that the opinion was given little weight because the author's signature was illegible. (R. at 32.) Plaintiff offers no argument on this point. (Pl.'s Br. at 10–11.) Yet as courts—including this Court—have noted, an ALJ may not rely on such evidence. *See Dixon v. Astrue*, No. 10-cv-5703, 2011 WL 4478493, at *12 (D.N.J. Sept. 26, 2011) ("Since the signature is illegible and the name and qualifications of the physician unknown, the form should have been given *no* weight." (citation omitted)); *see also Felipa v. Astrue*, No. 10-cv-3151, 2011 WL 4529772, at *4 (E.D. Pa. Aug. 31, 2011) (citing similar cases from "[o]ther District Courts in this Circuit" that note that an ALJ may not attribute weight to evidence with a "s[c]rawled signature").[3] In fact, the opinion evidence at issue from RA Pain consists of a three-page form that merely required the author to circle one or check options for a series of questions,

---

factual findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."). Because substantial evidence supports the ALJ's conclusions with respect to Dr. Austin, the ALJ's conclusions will not be disturbed.

[3] Under these cases, an ALJ should give *no* weight to such evidence. Here, however, the ALJ's decision states that the ALJ gave it "little weight." But the Court finds no harmful error in the ALJ's analysis to the extent the ALJ actually attributed more than no weight to the evidence. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (explaining that harmless error review applies to social security appeals). The Court finds no harmful error because in arguing that the ALJ erred in rejecting this evidence, Plaintiff claims that the ALJ should have given it *more* weight. (Pl.'s Br. at 10.) Thus, to the extent the ALJ gave more than no weight to the evidence, any error was helpful to Plaintiff. *See DiMeo v. Comm'r of Soc. Sec.*, No. 17-cv-763, 2018 WL 1469043, at *7 (D.N.J. Mar. 26, 2018) (declining to remand because "[t]o the extent the ALJ made an error, it is not only harmless—it was helpful").

but contains no discussion, explanation, or details to justify its statements. (R. at 1031–1033). As the Third Circuit has made clear, "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).

Second, and in keeping with the document's illegible author, the ALJ rejected the evidence from RA Pain because if it was signed by a physician's assistant, such assistants are not considered "acceptable medical sources" under Social Security Ruling 06-03p. (R. at 32.) This does not make the opinion irrelevant, however; it means that the opinion comes from an "other medical source," which is weighed using the factors set forth above. *See Braker v. Comm'r of Soc. Sec.*, No. 16-cv-0170, 2017 WL 374476, at *13 n.4 (D.N.J. Jan. 26, 2017) (noting that physicians' assistants may provide "other medical sources" evidence that is evaluated "using the same factors as medical opinions"). But the ALJ did not merely limit the evaluation of the RA Pain evidence to a finding that it was not signed by an acceptable medical source. Instead, the ALJ explained that the findings were not fully supported by the treatment record, that there was no rationale provided for certain of its restrictions, which Plaintiff does not dispute, and that it was not consistent with Plaintiff's admission that he drives or the evidence from Plaintiff's general practitioner, who documented Plaintiff's "good pain control on regimen[s]." (R. at 32.) In addition to the reasons above, this constitutes substantial evidence.

**B. The ALJ Did Not Err in Assessing Plaintiff's RFC**

Next, Plaintiff incorrectly advances two arguments as to why the ALJ erred in calculating Plaintiff's RFC. When calculating the RFC, the ALJ must consider all medically determinable impairments including those that are not severe. *See* 20 C.F.R. § 404.1545(a)(2). In doing so, the ALJ is responsible for assigning weight to the medical opinions of record. *See id.* The ALJ

13

must, however, "explain the basis for his or her conclusions." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). If evidence is rejected, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 711 (3d Cir. 1981). The explanation need not be comprehensive; "in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

Here, Plaintiff's first unavailing RFC argument is that the ALJ's RFC analysis "provides no discussion of or consideration for the Plaintiff's inability to perform work activities for significant periods of time following both surgical procedures" on Plaintiff's hip. (Pl.'s Br. at 14.) But the ALJ amply discussed and considered Plaintiff's ability to work given these procedures. After noting Plaintiff's surgeries, for example, the ALJ noted that Plaintiff attended physical therapy, and treatment notes as of October 2013 reflected good hip motion, stability, and strength bilaterally, and x-rays showed satisfactory position and good alignment of the hip components. (R. at 25.) The ALJ further noted that Plaintiff improved to a point where he was instructed to bear weight as he could tolerate, had full strength and intact sensation, and was able to sit comfortably, get up and down from the examination table without assistance, and dress himself without assistance. (R. at 25.) The ALJ even noted that Plaintiff did not bring a cane to an examination and ambulated without it. (R. at 25.) Finally, the ALJ noted that Plaintiff had normal station, full strength at 5/5, and could walk on his toes with intact sensation. (R. at 26.) Thus, contrary to Plaintiff's suggestion, the ALJ adequately discussed and considered his ability

to perform work activities following his surgical procedures; substantial evidence supports the ALJ's conclusion.[4]

Plaintiff's second RFC argument is that the ALJ erred "by failing to quantify in the RFC the frequency and duration of the lapses during which the Plaintiff would be expected to lose focus and concentration." (Pl.'s Br. at 14.) According to Plaintiff, "it is critical to understand how many lapses there will be throughout the course of an 8-hour workday and how long they will last," yet the ALJ did not specify that information in the RFC. (*Id.*)

This claim falls flat. Plaintiff cites no support for the contention that the ALJ was required to specify that information in addition to the thorough RFC discussion provided, except for his reply brief citation to the Agency's Program Operations Manuel System ("POMS"), the publicly available operation instructions for processing Social Security claims. *See Artz v. Barnhart*, 330 F.3d 170, 176 (3d Cir. 2003). But Plaintiff's reliance on POMS to attempt to show the ALJ erred is of no moment, for the Third Circuit has made clear that "[POMS] regulations do not have the force of law." *Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996). Thus, the Court finds no error on this point. *See Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) ("These POMS . . . provisions do not aid [plaintiff], however, because they lack the force of law and create no judicially-enforceable rights."); *Echevarria v. Acting Comm'r of Soc. Sec.*, No. 16-cv-3859, 2017 WL 4330243, at *5 (D.N.J. Sept. 29, 2017) (finding no error based on POMS because "they do not have the force of law").

---

[4] Plaintiff also makes an additional related claim, albeit in passing and without meaningful development. According to Plaintiff, the ALJ's discussion of Plaintiff's post-surgery impairments failed to contain "consideration for days missed from work or time off task due to pain and recovery symptoms following Plaintiff's surgeries." (Pl.'s Br. at 14.) But as explained above, the Court finds that the ALJ's discussion of Plaintiff's ability to perform work activities was sufficiently thorough and supported by substantial evidence. Thus, this contention provides no grounds to remand.

Moreover, the ALJ's RFC analysis also sufficiently accounts for the limitations Plaintiff alleges with respect to focus and concentration. Indeed, the ALJ expressly limited Plaintiff to "unskilled work" due to "lapses in focus and concentration," among other things. (R. at 24.) In support of the RFC for unskilled work, the ALJ took care to discuss how the evidence about Plaintiff's focus and concentration supported his ability to do unskilled work. The ALJ noted, for example, that despite Plaintiff's testimony that he has poor concentration, a wandering mind, and lapses in focus and concentration due to his mental health issues, (R. at 25, 26), his medications managed his symptoms effectively enough that Plaintiff had "coherent thought processes, appropriate thought content, intact memory, attentive concentration, and fair judgment." (R. at 26.)

Similarly, after achieving one-year sobriety, the ALJ noted that Plaintiff attended a consultative mental examination, where he displayed "logical and relevant thought processes, very good attention, good concentration, [and] intact memory," among other things. (R. at 27.) The ALJ even noted that after relapsing with alcohol, Plaintiff was prescribed medications, including Focalin, which his physician noted "completely resolves" Plaintiff's poor attention span, lack of focus, and low energy. (R. at 27.) With this level of care, the ALJ explained, Plaintiff was "stable," able "to focus and concentrate better and complete tasks," and had "normal memory" and "normal attention span and concentration." (R. at 27.)

Based on these and similar observations, the ALJ concluded that "[w]hen [Plaintiff] is sober and taking medication, his mental status is stable," and the "medical evidence of record supports the [RFC] as discussed above." (R. at 27.) Plaintiff does not address this portion of the ALJ's thoughtful discussion of Plaintiff's focus and concentration. Yet it provides substantial evidence in support of the ALJ's RFC finding.

### C. The ALJ Committed No Error at Step Five

Next, Plaintiff contends that the ALJ erred in finding that the Agency met its burden at step five. (Pl.'s Br. at 15.) But Plaintiff's one sentence, throwaway argument is based on the same errors alleged above. Because the Court finds no such errors, Plaintiff has failed to provide any grounds on which this Court could remand at step five.

### D. Plaintiff is Not Entitled to Summary Judgment

Finally, Plaintiff asks the Court to award him summary judgment and find him disabled without further proceedings because, in Plaintiff's view, the record is fully developed and, contrary to the ALJ's decision, substantial evidence indicates that Plaintiff is disabled. (Pl.'s Br. at 16.) The Court disagrees. Because, as explained above, substantial evidence supports the ALJ's findings that Plaintiff is not disabled, Plaintiff is not entitled to summary judgment awarding him benefits. The ALJ's decision must stand.

## IV. CONCLUSION

For the foregoing reasons, the ALJ's decision denying benefits is **AFFIRMED**. An Order shall issue.

Dated: 2/28/2019

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge